IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**WEST AMERICAN INSURANCE COMPANY,**

**Plaintiff,**

v.

**LOUIS MUND, ROBERT FURKIN, and REBECCA BROWN,**

**Defendants.**   No. 06-CV-0293-DRH

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction and Background

Pending before the Court is Plaintiff's motion for summary judgment (Doc. 58). Plaintiff argues that it is entitled to summary judgment as it neither owes a duty to defend nor indemnify the Brown and Furkin's claims based on fraud and intentional misrepresentation against Mund in the underlying suit. Defendants Brown, Furkin and Mund oppose the motion (Docs. 81 & 86). Based on the following, the Court grants the motion.

Western American Insurance Company ("Western America") brought this Declaratory Judgment action pursuant to **28 U.S.C. § 2201** and **28 U.S.C. § 1332**, against Louis I. Mund, Robert Furkin, Rebecca Brown, Paul Frierdich, William

Hawn, Robert Guilander, and Michael Frierdich on April 11, 2006 (Doc. 1).[1] Western American seeks a declaration by this Court that it does not owe a duty to defend or indemnify Mund pursuant to two commercial liability insurance policies issued to Mund by Western American. The issue in Western American's complaint stems from a St. Clair County, Illinois Circuit Court case containing claims of intentional misrepresentations, unjust enrichment, and forcible entry and unlawful detainer. **Brown v. Mund, Case No. 05-L-417**.[2] The Counts against Mund in the underlying suit are contained in Count I - Furkin's allegations of intentional misrepresentation; Count II - Furkin's allegations of unjust enrichment; Count IV- Brown's allegations of intentional misrepresentation and Count V - Brown's allegations of forcible entry and unlawful detainer.

On December 22, 2006, the Court entered an Order granting in part and denying in part Brown and Furkin's motion to stay (Doc. 49). The Court denied the motion to stay the case as the issue of duty to defend and granted the motion to stay as to the issue of duty to indemnify. Thereafter, West American moved for summary judgment. The Court now turns to address the merits of the motion for summary judgment.

---

[1] The only Defendants remaining in this lawsuit are Brown, Furkin and Mund. On January 24, 2007, the Court entered an Order dismissing Michael Frierdich and Robert Guilander pursuant to a Stipulation and Release (Doc. 56) filed by Western American (Doc. 57). Thereafter on February 16, 2007, the Court entered an Order dismissing William Hawn and Paul Frierdich pursuant to a Stipulation and Release (Doc. 64) filed by Western American (Doc. 65). In the Stipulation and Releases, these Defendants agree to be bound by this Court's determination as to this lawsuit.

[2] On July 14, 2005, Furkin and Brown filed suit in St. Clair County, Illinois Circuit Court against Louis I. Mund, Paul Frierdich, William Hawn, Robert Guilander and Michael Frierdich.

## II. Summary Judgment

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c)**; *Wyatt v. UNUM Life Insurance Company of America*, 223 F.3d 543, 545 (7th Cir. 2000); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999).  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).

In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *EEOC v. Sears, Robuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000).  No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  **Accord** *Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996), cert.

**denied, 117 S. Ct. 683 (1997);** *Tolle v. Carroll Touch, Inc.*, **23 F.3d 174, 178 (7th Cir. 1994)**.

### III. <u>Facts</u>

West American issued Mund two insurance policies: Commercial Package Policy BKW ("the 00-01 Policy") 52 26 55 02, effective June 30, 2000 through June 30, 2001 and Commercial Package Policy BKW ("the 99-00 Policy") 52 26 55 02, effective June 30, 1999 to June 30, 2000 providing commercial liability insurance as set forth therein. Both policies contain the following terms, conditions exclusions and definitions:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

1. **Insuring Agreement**.

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

   \*\*\*

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

\*\*\*

2. **Exclusions**.

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

The 00-01 Policy further provides in part:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**.

1. **Insuring Agreement**.

a. We will pay those sums that the insured becomes legally obligated pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

\*\*\*

2. **Exclusions**.

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**SECTION V - DEFINITIONS**

\*\*\*

13. "Occurrence" means an accident, including continuous or

      repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publications of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

                                    ***

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The 99-00 Policy provides in part:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**.

1. **Insuring Agreement**.

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply.

    ***

    b.  This insurance applies to:

    (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

    (2) Advertising injury caused by an offense committed in the course of advertising your goods, products or service; but only if the offense was committed in the "coverage territory" during the policy period.

    ***

2. **Exclusions**.

    This insurance does not apply to:

    a.  "Personal injury" or "advertising injury":

    (1) Arising out of oral or written publication of material, if done or by or at the direction of the insured with knowledge of its falsity;

**SECTION V - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services:

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business; or;

    d. Infringement of copyright, title or slogan.

    \*\*\*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time;

    \*\*\*

13. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

    a. False arrest, detention, or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

      d.      Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or;

      e.      Oral or written publication of material that violates a person's right of privacy.

After Mund received the underlying suit, he forwarded a copy of the lawsuit to his attorney, Jay Dowling, who then tendered Mund's defense to Western American.

### IV. Analysis

Under Illinois law, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." **Crum and Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1077 (Ill.1993); see also Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co., 139 F.3d 561, 565 (7th Cir. 1998)(stating that "Illinois law ⋯ treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily"** ). When analyzing an insurance policy, a court must look to the intentions of the parties and consider the policy as a whole, "taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." **Id. at 1077-78**. Any ambiguities in the policy must be construed against the drafter, and in favor of the insured party. **Continental Cas.**

***Co. v. McDowell and Colantoni, Ltd.,* 668 N.E.2d 59, 62 (Ill. App. 1996**). However, the court should "not search for ambiguity where there is none." ***Crum,* 620 N.E.2d at 1077**.

Whether an insurer must defend the insured is a question resolved by comparing the allegations of the underlying complaint against the insured to the insurance policy. ***Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.,* 166 Ill.2d 520, 211 Ill.Dec. 459, 655 N.E.2d 842, 847 (1995)**. In other words, it is only the allegations in the underlying complaint, considered in the context of the relevant policy provisions, which should determine whether an insurer owes a duty to defend an action brought against an insured. ***Scudder v. Hanover Insurance Co.,* 559 N.E.2d 559, 561 (Ill. App. 1990)**. Even if some of the conduct alleged is not covered that will not obviate the duty to defend if conduct covered by the policy is also alleged. ***Maryland Cas. Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 28 (1976)**. However, an insurer has no duty to defend where it is "clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." ***U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926, 930 (1991)**. The legal labels used by a plaintiff in the underlying case are not dispositive as to whether a duty to defend exists. ***Lexmark Int'l, Inc. v. Transp. Ins. Co.,* 327 Ill.App.3d 128, 260 Ill.Dec. 658, 761 N.E.2d 1214, 1221 (2001)**. A court may look beyond the allegations in the complaint only if the coverage issue involves such

ancillary matters as whether the insured paid the premiums or whether he is the proper insured under the policy. **State Farm Fire & Casualty Co. v. Shelton, 531 N.E.2d 913, 919 (Ill. App. 1988)**.

"These principles are derived from the rule that when a court is asked to declare whether an insured's conduct is covered under a policy in the context of a declaratory judgment action, the court must not determine disputed factual issues that are crucial to the insured's liability in the underlying lawsuit." **Bituminous Casualty Corp. v. Fulkerson, 571 N.E.2d 256, 261 (Ill. App. 1991)(citations omitted)**. "A declaratory judgment action should not, after all, be used to force the parties to an injury action to have a 'dress rehearsal' of an important issue expected to be tried in the injury action." **Id. (citations omitted)**.

In Count I - Intentional Misrepresentation, Furkin alleges in ¶ 4 that "Defendants named in this Count directly or by ratification specifically defrauded the Plaintiff Robert Furkin of the aforesaid business and property interest ... when in part the Defendant Louis Mund intentionally failed to inform the Plaintiff Robert Furkin on or about July 27, 2000, that he intended to sell the Columbia Golf Course and related properties to the Defendants Paul Frierdich and William Hahn or their corporation.  The aforesaid conduct in this Paragraph constitutes intentional misrepresentation under Illinois Law since the Defendant Mund through intimidation and fear of economic loss caused the Plaintiff Robert Furkin to accept approximately $390,000 when his interest was worth several millions dollars which would have

been realized had he been allowed to purchase the Columbia Golf Course and other related properties under the right of first refusal that he was denied." Count II of the complaint alleges the same basic factual allegations as Count I, but Count II is premised on unjust enrichment. It seeks similar damages as Count I.

Count IV - Intentional Misrepresentation, alleges that "Said Defedants named in this Count have defrauded and continue to defraud the Plaintiff Rebecca Brown of the aforesaid business and property interest pleaded in this Paragraph when in part the Defendants systematically took and destroyed all inheritances assets via the following conduct as pleaded in the paragraph below and said conduct qualifies as Intentional Misrepresentations under Illinois Law. ... That Defendant Mund intentionally failed to disclose this material fact to Rebecca Brown before or after the death of Ruth Reeves and all times relevant thereto." Count IV also alleges that Defendant Mund "knew the failure to disclose the material facts as stated about were false acts or should have known that they were false." Count V - Forcible Entry and Unlawful Detainer alleges the same factual allegations as Count IV. It also alleges "[t]hat pursuant to 735 ILCS 5/9-101 et seq. the instant cause of action is brought because the aforesaid Defendants have peacably entered the properties known as the Columbia Golf Course, Land Trust 5048 property and Lot 7A via fraudulent transactions and forgeries."

West American argues that the allegations as to Mund in the underlying complaint do not allege "damages" covered by the Policies; that it does not allege an "occurrence" which would trigger coverage; and that the exclusionary clauses in the

insurance policies preclude coverage. In response, Furkin and Brown argue that Counts I, II, IV and V are covered under the insurance policies as these Counts contain allegations of property damage and breach of fiduciary duties and thus would trigger the duty to defend. Specifically, Furkin and Brown argue that the allegations of property damage are that "has incurred and continues to incur financial loss due to the present value of property funds that have been unlawfully taken from him" and that "has incurred and continues to incur financial loss in spending great sums of money to recover lawful ownership of the rights and property involved." Furkin and Brown further argue that there are specific requests for the return of real property and personal property. In response, Mund contends that there exists a question of fact as to Western American's duty to defend as it is clear from Furkin's deposition that Furkin's actual complaints relate to his misunderstandings and remorse as it relates to not having purchased Mund's shares of Columbia Golf Club, Inc., when he had the opportunity to do so.[3] As stated previously, the Court may not consider Furkin's deposition testimony to decide the issue of whether West American has a duty to defend. **See Fulkerson, 571 N.E.2d at 261 ("when a court is asked to declare whether an insured's conduct is covered under a policy in the context of a declaratory judgment action, the court must not determine disputed factual issues that are crucial to the insured's liability in the underlying lawsuit. ... A declaratory action should, after all, be used to force the parties to an injury**

---

[3] In his response, Mund adopted and incorporated by reference pages 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 of Furkin and Brown's response (Doc. 84, p. 4).

**action to have a 'dress rehearsal' of an important issue expected to be tried in the injury action.")**.

A review of the Counts in the underlying complaint directed against Mund show that the conduct alleged is excluded from coverage in both of the insurance policies. The underlying complaint is replete with allegations that Mund's conduct was done to intentionally deceive Furkin and Brown and that Mund knew or should have know that his actions were false. The facts, as presented in the underlying complaint, are consistently couched in terms of intentional deception and fraud. *See Connecticut Indemnity Co. v. DER Travel Service, Inc.*, **328 F.3d 347, 351 (7th Cir. 2003) ("Phrases such as 'mislead and conceal,' 'scheme or device' and 'intentionally and willfully' are the paradigm of intentional conduct ...")**. Thus, the exclusions of the insurance policies apply and the alleged intentional conduct is precluded from coverage.

## V. Conclusion

Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment (Doc. 54). The Court **DECLARES** that Western American Insurance Company neither has a duty to defend nor indemnify Louis I. Mund in the underlying state court action, *Robert Furkin and Rebecca Brown v. Louis Mund, Paul Frierdich, William Hawn, Robert Guilander and Michael Frierdich*, Cause No. 05 L 417. The Court **ORDERS** the Clerk of the Court to enter judgment in favor of Western American Insurance Company and against Louis I. Mund, Robert Furkin

and Rebecca Brown.  Further, the Court **DENIES as moot** Plaintiff's motion for hearing on Plaintiff's motion for summary judgment (Doc. 90).

        **IT IS SO ORDERED.**

Signed this 28th day of June, 2007.

/s/     David  RHerndon
**United States District Judge**
